IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. __:_____-CV-____-__

| BRANDON CASE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| v. | ) | |
| | ) | |
| BEASLEY, a correctional officer; | ) | |
| URIETA, a correctional officer; and | ) | |
| JOHN DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

**Introduction**

1. When a prison official ignores a serious, known risk to an inmate's safety, that official violates the inmate's rights under the United States Constitution. This rule makes sense. Prisons can be dangerous, and inmates lack the ability to the protect themselves. They have no choice but to rely on prison officials to keep them safe.

2. One of the principal dangers in a prison is from violent inmates. Keeping inmates with a known propensity to assault their peers separate from vulnerable inmates is part of Central Prison's classification program. But it was not done here.

3. Correctional Officers Beasley and Urieta were supposed to keep so-called "safekeepers," ultra-violent detainees housed in prison because the county jails they came from could not handle them, separate from general population inmates like Brandon Case. They failed. And because of that failure, a safekeeper attacked Case, leaving him with dozens of facial fractures, 3 plates and 21 screws in his face, and the possibility of a lifetime of incurable pain from nerve damage.

4. Case now sues to recover for those injuries.

**Jurisdiction & Venue**

5. The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because Case's claims arise under federal law.

6. This District is the proper venue for this case because the events giving rise to Case's claims took place in Wake County.

7. Under Local Civil Rule 40.1(c)(1), the appropriate Division for this case is the Western Division because Case now is resident of Warren County.

**Parties**

8. Plaintiff Brandon Case is a man living in North Carolina who is currently incarcerated at Warren Correctional Institution in Warren County, North Carolina.

9. Defendant Beasley, first name unknown, was, at the relevant times, a correctional officer at Central Prison located in Wake County, North Carolina.

10. Defendant Urieta, first name unknown, was, at the relevant times, a correctional officer at Central Prison located in Wake County, North Carolina.

11. John Does 1-10 are employees of the Department of Public Safety whose misconduct resulted in Case's injuries but whose names Case does not yet know.

**Factual Allegations**

<u>Safekeepers</u>

12. Central Prison in Raleigh houses prisoners with a wide range of security classifications, including "safekeepers."

13. Safekeepers include individuals, originally housed in county jails, who are so violent and aggressive that the jails cannot safely house them. *See Policy & Procedures of the*

2

*State of North Carolina Department of Public Safety, Prisons,* ch. C, § .1601(b)(1), available at https://files.nc.gov/ncdps/C.1600_11_06_17_0.pdf.

14. Central Prison has many explicit policies designed to protect staff and other inmates from these safekeepers.

15. For example, safekeepers wear bright, gold-colored jumpsuits, so they are easy to see. *Id*. § C.1604(i).

16. And safekeepers are always kept separate from general population inmates.

17. This requires special care when safekeepers and other inmates move from one part of Central to another, as from a dorm to a recreation area.

18. General population inmates and safekeepers must use common, secure hallways to move around the facility.

19. But they must never occupy the same secure hallway at the same time.

20. To ensure they do not, correctional officers occupy control stations throughout Central Prison with window and security camera visibility of the secure hallways and the locked doors leading to them.

21. When general population inmates or safekeepers come up to a locked door and ask to enter the hallway, the officers are to check visually and with any officers in the hallway to make sure the hallway is safe before unlocking the door and allowing the general population inmate or safekeeper in.

22. These checks are critical to the safe movement of inmates throughout the facility.

<u>Officers Beasley and Urieta Allow Kenneth Kennion to Attack Brandon Case</u>

23. On the morning of January 21, 2020, Brandon Case was getting a haircut in Central Prison.

24. The barbershop is on the second floor.

25. After his haircut, Case left the barbershop to return to his unit.

26. To return to his unit, he needed to descend a staircase.

27. At the bottom of that staircase was a locking door that led to a secure hallway.

28. Beasley and Urieta were working the control station responsible for the door to the secure hallway.

29. As Case walked down the stairs, there were safekeepers in the secure hallway, including Kenneth Kennion.

30. Beasley and Urieta saw the safekeepers in the hallway and should have closed the door separating the stairs from the hallway.

31. Beasley and Urieta did not close the door.

32. When he reached the bottom of the staircase, Case looked through the doorway into the hall just as Kennion struck Case in the head with a metal object.

33. Case never saw Kennion coming.

34. Kennion struck Case three or four times before correctional officers intervened.

35. The attack left Case dazed and semi-conscious.

Case's Emergency Treatment

36. Officers took Case to a medical station.

37. Case remembers a nurse saying that Case's face was swelling up too fast.

38. The officers took Case to the hospital within Central Prison.

39. There, medical personnel took X-Rays and a CT scan of Case's head.

40. After the scans, Case was taken to an urgent care bed.

41. There, a correctional officer removed Case's restraints and told him "I'm going to take these restraints off because you didn't do anything. You didn't even have a chance, we watched the video," or words to that effect.

42. Later, a nurse came in to give Case a large dose of Percocet.

43. The nurse told Case he had more facial fractures than anyone she'd ever seen and members of medical staff were trying to send him to UNC for surgery, or words to that effect.

44. Later, the nurse returned and told Case that doctors at UNC recommended he be treated at Duke given the complexity of his injuries.

45. Roughly 4 or 5 hours after the attack, two correctional officers took Case to a hospital affiliated with Duke University.

46. He was admitted to the emergency room and seen by two plastic surgeons.

47. Those surgeons scheduled and performed surgery several days later.

48. The surgery involved cutting a nerve in Case's face and implanting 3 plates and 21 screws.

49. Case's surgeons wanted him to remain at the hospital for several days after surgery, but the officers returned Case to Central Prison against the doctors' wishes.

50. There, he learned from correctional officers that Beasley and Urieta had been responsible for hallway security when he was attacked and that one or both had been disciplined for their failure to protect him.

51. Case was later transferred to Tabor Correctional Institution (hereafter "Tabor").

52. Case was recently transferred from Tabor to Warren Correctional Institution.

<u>Case's Injuries and Pain</u>

53. Case has been in constant pain since the attack.

54. Among other things, Case suffers from pain and tingling in his jaw, eye pain and sensitivity to light, and headaches.

55. A neurologist who treated Case after his transfer to Tabor told Case that the constant pain he feels is a common result of the nerve damage resulting from Case's emergency surgery.

56. The neurologist also told Case that he may require additional surgery, and even that may not end the pain or alleviate his other symptoms.

Other Attacks

57. The safekeeper attack on Case was at least the third time in recent months that a safekeeper attacked a general population inmate because of staff's failure to follow protocols to keep general population inmates separated from safekeepers.

58. In one of those instances, in the same spot where Case was attacked, a safekeeper who should not have been allowed in the secure hallway attacked and knocked out a janitor.

59. On information and belief, Urieta and Beasley were aware of these attacks on the morning they failed to protect Case.

**First Claim for Relief**

*Failure to Protect against Beasley under 42 U.S.C. § 1983*

60. Case realleges all other allegations here.

61. Safekeepers like Kennion posed a serious risk to inmates like Case.

62. Beasley was aware of this risk because he was aware generally of who safekeepers are, the standard procedures designed to secure spaces within the prison, that Kennion was a safekeeper, and that Case was a general population inmate.

6

63. Beasley failed to take reasonable measures to protect Case from this risk because he failed to follow the standard procedures for keeping safekeepers and general population inmates separate on the morning Case was attacked.

64. Because Beasley failed to take these measures, Kennion was able to attack Case, causing him serious injury.

65. At the time Beasley was acting under color of law.

66. Case is therefore entitled to compensatory damages, punitive damages, attorneys' fees, litigation costs, and pre- and post-judgment interest.

**Second Claim for Relief**

*Failure to Protect against Urieta under 42 U.S.C. § 1983*

67. Case realleges all other allegations here.

68. Safekeepers like Kennion posed a serious risk to inmates like Case.

69. Urieta was aware of this risk because he was aware generally of who safekeepers are, the standard procedures designed to secure spaces within the prison, that Kennion was a safekeeper, and that Case was a general population inmate.

70. Urieta failed to take reasonable measures to protect Case from this risk because he failed to follow the standard procedures for keeping safekeepers and general population inmates separate on the morning Case was attacked.

71. Because Urieta failed to take these measures, Kennion was able to attack Case, causing him serious injury.

72. At the time Urieta was acting under color of law.

73. Case is therefore entitled to compensatory damages, punitive damages, attorneys' fees, litigation costs, and pre- and post-judgment interest.

**Prayer for Relief**

Based upon the foregoing, Case respectfully prays for the following relief:

1. Compensatory damages from Defendants, jointly and severally, in an amount to be determined at trial;

2. Punitive damages from Defendants, jointly and severally, in an amount to be determined at trial;

3. Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988;

4. Costs of court and interest as allowed by law;

5. A trial by jury on all contested issues of fact; and

6. Such other and further relief as the Court may deem just and proper.

This 7th day of June 2021

/s/ Alison R. Leff

Alison R. Leff
Law Office of Thomas R. Kayes, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
(708) 722-2241
alison@kayes.law
Ill. Bar No. 6296422 (Leff)
Attorneys for Plaintiff

G. Christopher Olson
Olson Law, PLLC
514 Daniels St., #136
Raleigh, NC 27605
(919) 624-3718
chris@olsonlaw-pllc.com
Fax: (919) 834-1071
N.C. State Bar No. 21223
Local Civil Rule 83.1(d) Counsel for Plaintiff