THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-3157-D

| BRANDON CASE, | ) | |
|---|---|---|
| Plaintiff | ) ) ) | **Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment** |
| v. | ) ) | |
| BRANDON BEASLEY et al., | ) ) | |
| Defendants. | ) | |

## INTRODUCTION

Central Prison houses more than a thousand men, most of whom are classified as general population prisoners. The prison also houses around 170 detainees classified as "safekeepers." Safekeepers are wards of the county jails who are sent to the state prison for a variety of reasons, including because they exhibit violently aggressive behavior that cannot be contained in the county facilities. At Central Prison, general population prisoners and safekeepers are kept separate from each other for safety reasons. The prison has protocols to make sure the two populations don't mix. For one thing, safekeepers live in separate housing units. For another, safekeepers dress in bright yellow uniforms so staff can easily distinguish them from other prisoners. As another precaution, the doors to all the shared hallways at the prison are kept closed and locked to ensure safekeepers and general population prisoners don't walk into the hallways at the same time.

Since 2018, Defendant Kenny Custodio worked as a correctional officer at Central Prison. He knew the protocols to prevent safekeepers and general population prisoners from meeting in the hallways, including the rule that the hallway doors are always to be closed and locked. He knew it was dangerous to leave those doors open and unattended. But on January 21,

2020, Custodio chose to disregard those protocols by leaving the stairwell door open for an extended period. He did so not by mistake, but rather as a conscious choice to avoid the hassle of having to open and close the door every few minutes for prisoners coming and going to the barber, who was set up in the hallway near Custodio's post.

The consequences of Custodio's choice were dire for plaintiff Brandon Case, then a general population prisoner. Sometime after Custodio opened the hallway door, Case passed through, descended a flight of stairs, and emerged one floor below to find the safekeepers coming in from recreation. Unprovoked, a safekeeper attacked Case, shattering the bones in his face.

Case sued Custodio under 42 U.S.C. § 1983 for violating his Eighth Amendment rights by failing to protect Case from being attacked by another prisoner. Custodio's liability is beyond dispute. Custodio conceded all the material facts by failing to respond to Case's requests for admission under Federal Rule of Civil Procedure 36, and he affirmed those admissions at his deposition. Custodio hasn't pleaded any affirmative defense, he served no discovery, and he took no depositions in the more than two years this case has been pending. This case thus presents the rare circumstance under which summary judgment for a plaintiff is warranted. Because there is nothing left for the jury to decide, the Court should enter a judgment of liability against Custodio and set a jury trial on damages.

## UNDISPUTED MATERIAL FACTS

On January 21, 2020, Brandon Case went to the second floor of the building where he was housed at Central Prison, D block in Unit 2, to get a haircut. Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment (hereafter, "PSOF") ¶¶ 42, 47. After his haircut, Case walked down the hallway toward the stairwell to the

first floor, through an open door separating the hallway from the stairwell, down the stairs, and through another open door into the first-floor hallway. *Id.* at ¶¶ 54–57.

As Case was traveling down the stairs, a group of prisoners classified as safekeepers was entering the first-floor hallway, coming in from recreation. *Id.* at ¶ 58. Safekeepers are detainees who are legally in the county's custody; but they are housed in state custody for several reasons, including because some safekeepers are unusually violent. *Id.* at ¶¶ 5–6. Safekeepers and general population prisoners like Case are supposed to be kept separate. *Id.* at ¶¶ 8, 10–12.

Case emerged through the open door onto the first floor and walked down the last few steps on the other side of the door. *Id.* at ¶¶ 60, 62. At the same time, the group of safekeepers moved toward him, on their way to their cells on the second floor. *Id.* at ¶¶ 58–59. Just after Case descended the last couple stairs into the hallway, a safekeeper named Kenneth Kennion attacked him. *Id.* at ¶¶ 61–63. Kennion punched Case on the right side of the face, causing Case to fly sideways and strike his head hard against the concrete wall before falling to the ground. *Id.* at ¶ 61. Kennion stooped down and punched Case's head with his left fist and then twice more with his right fist. *Id.* A correctional officer standing in the hallway ordered Kennion to stop. *Id.* Kennion then put his hands into the air and backed up. *Id.* While the officer moved to handcuff Kennion, Case struggled to his feet and staggered off down the hallway, a trail of blood dripping from his face *Id.*

Case and Kennion should never have met in the hallway as they did. The hallways at Central Prison are closed off by sliding doors that lock in place and should always remain closed when no one is passing through. *Id.* at ¶¶ 19–25. Correctional officers sit in control booths on each floor of the cell block. *Id.* at ¶¶ 13–15. Those officers can open and close the hallway doors using buttons on a control panel in their booths. *Id.* at ¶¶ 17–18. Before opening the doors to

3

allow prisoners out of the hallway, the control booth officers are supposed to check to make sure it is safe to do so. *Id*. at ¶¶ 24–25, 29–30. They can check visually—by looking down the hallway in both directions—or they can make a radio call to ensure the area where the prisoner is headed is safe and clear. *Id*. at ¶¶ 26–27.

That didn't happen on January 21, 2020. *Id*. at ¶¶ 48–52. Defendant Kenny Custodio was in the control booth on the second floor of D block in Unit 2 that day. *Id*. at ¶ 41. He'd left the secure door to the stairwell open for an extended period because there were prisoners coming and going to get haircuts, and he didn't want to be bothered by repeated requests to open the door. *Id*. at ¶¶ 48–49. Custodio did not leave the door open by accident. *Id*. He made a conscious decision, knowing the risks. *Id*. at ¶¶ 33–40, 48–50. Because the door was left open, Case was allowed to walk through the secure door and pass into the stairwell even though safekeepers were moving through the hallway. *Id*. at ¶¶ 52, 55, 58–59.

Case's injuries from the attack were grave. *Id*. at ¶ 75. Case was transported to Duke Medical Center where imaging showed a nasal bone fracture and complex fractures on both sides of his face. *Id*. at ¶ 76. He was admitted to the hospital for surgery, which included placing three metal implants secured by screws in the bones of his face. Case will suffer from chronic facial pain for the rest of his life. *Id*. at ¶¶ 77–79.

On June 7, 2021, Case filed this lawsuit alleging that two correctional officers, Brandon Beasley (Count I) and Eric Urieta (Count II), violated his rights under the Eighth Amendment to United States Constitution by failing to protect him from Kennion's attack. *Id*. at ¶ 80. Case filed an Amended Complaint on August 11, 2022, naming Kenny Custodio as an additional defendant and adding an Eighth Amendment claim against Custodio as Count III. *Id*. at ¶ 81. After appearing by counsel, Custodio failed to answer the amended complaint, *id*. at ¶ 86; served no

written discovery, *id*. at ¶ 87; noticed no depositions, *id*. at ¶ 88; disclosed no expert witness, *id*. at ¶ 89; and failed to respond to requests for admission served on him under Federal Rule of Civil Procedure 36, *id.* at ¶¶ 82–85.

## ARGUMENT

I. **Legal Standards**

   A. **Summary Judgment**

Summary judgment is warranted when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). "An issue is 'genuine' if a reasonable jury, based on the evidence, could find in favor of the non-moving party." *Acosta v. Del Sol P'ship 2, Inc.*, No. 5:16-CV-231-BO, at *2 (E.D.N.C. Feb. 14, 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (other citations omitted). To prevent summary judgment, nonmoving parties must present "sufficient evidence" to allow reasonable jurors to find for them. *Jones v. Harrison*, No. 4:12-CV-90-D, at *5 (E.D.N.C. July 21, 2014) (citing *Anderson*, 477 U.S. at 249–50). "Accordingly, a court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative." *Jones*, No. 4:12-CV-90-D, at *5 (cleaned up).

   B. **Eighth Amendment**

"The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Danser v. Stansberry*, No. 5:08-CT-3116-BO, at *10 (E.D.N.C. Mar. 21, 2013) (quoting *Farmer v. Brennan*, 511 U.S.

5

825, 833 (1994)) (cleaned up). A "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Danser*, No. 5:08-CT-3116-BO, at *10. The Fourth Circuit recognizes that a prison official can violate a prisoner's Eighth Amendment rights by exhibiting deliberate indifference to a serious risk that the inmate will be attacked by another inmate. *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017). A deliberate indifference claim based on failure to protect a plaintiff from being attacked by another prisoner "may be characterized by three components: (1) the subjective knowledge of a substantial risk of serious harm; (2) the conscious disregard of that risk; and (3) the absence of intent to cause the harm risked." *Anderson*, 877 F.3d at 545. Last, a plaintiff must show the defendant was acting under color of law when the plaintiff's rights were violated. 42 U.S.C. § 1983; *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994). The record in this case establishes each of those elements beyond dispute.

II. **Case Is Entitled To Summary Judgment On Count III Against Custodio**

There are no genuine disputes of material fact on the elements of Case's claim against Custodio because Custodio admitted the material facts by: failing to respond to Case's requests under Federal Rule of Civil Procedure 36, Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); admitting the key facts at his deposition; and failing to develop contrary evidence, serving no discovery requests, taking no depositions, and disclosing no experts. Summary judgment as to liability on Case's claim against Custodio is thus appropriate.

   A. **Custodio knew of a substantial risk of serious harm.**

First, Case must show that Custodio had "subjective knowledge of a substantial risk of

6

serious harm . . . ." *Anderson*, 877 F.3d at 545. Here, Custodio's admissions "conclusively establish[]," Fed. R. Civ. P. 36(b), that he "knew of the risk that Kenneth Kennion might attack Plaintiff if he and Plaintiff were permitted to enter a prison hallway at the same time," PSOF ¶¶ 82–85. This admission comports with Custodio's testimony. By January 2020, Custodio had worked in Unit 2 since 2018. *Id*. at ¶¶ 31–33. As such, Custodio knew safekeepers posed a special risk, and he knew safekeepers and general population prisoners were not to mix. *Id*. at ¶¶ 35–39. Custodio knew that keeping the sallyport doors to the stairwells closed was a mandatory safety tool to prevent mixing of safekeepers and general population prisoners. *Id*. at ¶¶ 30, 40.

What's more, Custodio knew the safekeepers had gone out to recreation on the morning of January 21, 2020, as he opened the doors to let them out in the first place. *Id*. at ¶¶ 43–44. Custodio knew that recreation lasted an hour, so he knew to expect their return at the same time Case had finished his haircut. *Id*. at ¶¶ 43–45. Custodio testified that he knew Case was a general population prisoner; and he could see Case walking unescorted through the hallway to and from the barber. *Id*. at ¶¶ 53–54. Those facts compel the finding that Custodio knew keeping the sallyport door to the stairwell open created a substantial risk that the safekeepers coming in from recreation would mix with general population prisoners in the hall, and someone would thereafter get hurt in exactly the way Case did get hurt. *Id*. at ¶¶ 48–51, 64–66.

The risk of harm that flowed from Custodio's conduct was also obvious. *Danser*, No. 5:08-CT-3116-BO, at *10-11 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). Custodio admitted as much. PSOF ¶¶ 66, 82–85 (request to admit "the risk of Kenneth Kennion attacking Plaintiff if he and Plaintiff were permitted to enter a prison hallway at the same time was obvious"); Fed. R. Civ. P. 36(b). And understanding, as Custodio did, that the prison is a dangerous place, and the sallyport doors

exist to control the movement of prisoners through the halls, it was obvious that leaving the door open created a substantial risk of serious harm. PSOF ¶¶ 22–30, 34–40.

There is also no dispute the risk of which Custodio was aware was a substantial risk of serious harm. It is well-established that a physical attack by another prisoner constitutes serious harm in the context of a failure to protect claim. *See*, *e.g.*, *Cox v. Quinn*, 828 F.3d 227, 234 (4th Cir. 2016) (affirming denial of qualified immunity for defendants on failure to protect claim, recognizing as a serious harm plaintiff's beating by another prisoner that "lasted between 45 and 75 seconds" and caused "broken ribs, a loosened tooth, bruising, swelling, and abrasions"). And Case's unrebutted expert witness, Dr. Kenya Williams, spells out the gravity of Case's injuries in her expert report, noting, among other things, that Case's nose was broken and the bones on both sides of his face were shattered. *Id.* at ¶¶ 76–79. Surgeons implanted three metal plates in Case's face to repair his injuries. *Id*. Given the pain that Case still experiences today, Dr. Williams concludes that he cannot be expected to make a full recovery. *Id*. Those injuries easily meet the bar of seriousness. *See e.g., Cox*, 828 F.3d at 234 (recognizing as serious a beating that caused "broken ribs, a loosened tooth, bruising, swelling, and abrasions").

### B. Custodio consciously disregarded the risk of harm to Case.

Second, Case must show that Custodio consciously disregarded the risk to Case. *Anderson*, 877 F.3d at 545. Conscious disregard means "intentionally refusing or failing to take reasonable measures to deal with the problem." *Anderson*, 877 F.3d at 546 n.* (quoting 3B Kevin F. O'Malley *et al., Federal Jury Practice & Instructions § 166:30*, at 648 (6th ed. 2013)). Here, Custodio admitted that "on January 21, 2020, [he] disregarded the risk that Kenneth Kennion might attack Plaintiff if [Kennion] and Plaintiff were permitted to enter a prison hallway at the same time," *id.* at ¶¶ 67, 82–85; he "had the ability to prevent Plaintiff from

8

entering the prison hallway where Kenneth Kennion attacked him while Kennion was still in the hallway," *id*. at ¶¶ 68, 82–85; and he "failed to take reasonable measures to abate the risk that Kenneth Kennion might attack Plaintiff if the two prisoners were permitted to enter a prison hallway at the same time," *id.* at ¶¶ 73, 82–85. Because those admissions "conclusively establish" those facts, summary judgment on this element is warranted. Fed. R. Civ. P. 36(b).

A finding that the undisputed facts prove this element against Custodio is also fair and just. Custodio was trained on the "sallyport effect"—the safety protocol of controlling prisoner movement by forcing prisoners to gather between locked doors as they move through the prison. *Id*. at ¶ 30. Custodio knew that allowing safekeepers and general population inmates to mix in the hallway posed a serious risk of harm to general population inmates like Case, and he intentionally decided not to take reasonable measures to address that problem by closing the sallyport door. *Id*. at ¶¶ 31–40, 48–51. This was not inadvertence or neglect: Custodio testified that he made a conscious choice to leave the sallyport door open, not for a security-related reason, but rather to avoid the minor inconvenience of having to keep pressing the button to open the door as prisoners went to and returned from the barber. *Id*. at ¶ 49. Custodio testified that when he made that choice, he *knew* the safekeepers were out for recreation. *Id*. at ¶ 50. And he could plainly see that the prisoners getting their hair cut were general population prisoners. *Id*. at ¶ 8.

Custodio could also have, but failed to alert the officer working in the first-floor control booth that a general population prisoner was coming, either by using his radio, or by calling down the open staircase within the control booth. *Id*. at ¶¶ 24–27, 71. This failure is particularly egregious, as Custodio can be seen leaning over the railing looking down at the first floor of the control booth as Case passes by him on the way down the stairs from the barber, just moments

9

before the attack. *Id.* at ¶ 54. Nothing stopped Custodio from taking the simple measure of letting the first-floor control booth operator know Case was coming. *Id.* at ¶ 68. If Custodio had told the first-floor control booth officer Case was coming, that officer would have closed the sallyport door at the bottom of the staircase to stop the incoming safekeepers from entering the stairwell while Case was there. *Id.* at ¶ 72. *Anderson*, 877 F.3d at 546 n.* (quoting O'Malley, *Federal Jury Practice & Instructions § 166:30*, at 648) ("Deliberate indifference is established . . . if there is actual knowledge of a substantial risk that plaintiff [may be seriously harmed by another prisoner and] defendant prison officials disregard that risk by intentionally refusing or failing to take reasonable measures to deal with the problem.").

Given the seriousness of the risk Case faced, how simple it would have been for Custodio to press the button and close the door or alert the first-floor officer to Case's presence, and the lack of any security-related reason for leaving the door open, the facts establish the second element of Case's failure to protect claim.

### C. Custodio's acts unintentionally harmed Case.

Third, Case must show that the "absence of intent to cause the harm risked." *Anderson*, 877 F.3d at 545. On the question of intent, Custodio testified that he left the door open to make his life easier, not with the intent to cause violence. PSOF ¶ 49. There is no contradictory evidence. The only conclusion a reasonable jury could draw from the evidence is that when he opened the sallyport door and left it open, Custodio intentionally took a risk that he knew might cause harm while lacking any intent to cause such harm. *Anderson*, 877 F.3d at 545.

### D. Custodio acted under color of law.

Fourth, Case must show that Custodio was acting "under color of [law]." 42 U.S.C. § 1983. "State employment is generally sufficient to render the defendant a state actor, and a

10

defendant in a § 1983 suit necessarily acts under color of state law when he abuses the position given to him by the State." *Jennings v. Univ., N.C., at Chapel Hill*, 444 F.3d 255, 293–94 (4th Cir. 2006) (cleaned up). Custodio admits he was acting under color of law within the meaning of § 1983 at the relevant time. PSOF ¶¶ 74, 82–85.

### E. Summary judgment may be based on Custodio's admissions.

The Court need not hesitate to rely on Custodio's admissions in granting summary judgment on liability. "[O]nce a matter that is properly [the] subject of an admission under Rule 36(b) has been admitted during discovery, the district court is not free to disregard that admission." *Adventis, Inc. v. Consolidated Property Holdings, Inc.*, 124 Fed. Appx. 169 (4th Cir. 2005) (citing *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 803 (3d Cir. 1992) ("Rule 36 admissions are *conclusive* for purposes of the litigation and are sufficient to support summary judgment.")). It makes no difference that Custodio admitted the facts by failing to respond to the admissions. "Courts within the Fourth Circuit have consistently held that admissions, *including unanswered requests for admissions*, may provide a sufficient factual basis to support a motion for summary judgment." *LA Michoacana Nat., LLC v. Maestre*, No. 3:17-cv-00727-RJC-DCK, at *1 (W.D.N.C. June 6, 2019) (emphasis added). In *Acosta*, for example, the court granted summary judgment for a plaintiff under similar circumstances, explaining:

> Unanswered requests for admissions are considered admitted as a matter of law. As defendants did not respond to plaintiff's request for admissions, those admissions, as well as facts admitted in defendants' original answer, are properly relied upon both by plaintiff's statement of undisputed material facts in its motion for summary judgment and this Court's granting of that motion.

No. 5:16-CV-231-BO, at *3 (citing Fed R. Civ. P. 36(a); *Batson v. Porter*, 154 F.2d 566, 568 (4th Cir. 1946)) (other citations omitted). Likewise, in *Jones v. Harrison*, the court recognized: "a party's failure to respond to a request for admissions under Federal Rule of Civil

11

Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment." No. 4:12-CV-90-D, at *5 (E.D.N.C. July 21, 2014) (cleaned up) (citing *United States v. Renfrow*, 612 F. Supp. 2d 677, 682 (E.D.N.C. 2009)); *see also Mercer v. Am. Airlines, Inc.*, No. 5:14-CV-140-BO, at *3 (E.D.N.C. Oct. 23, 2015) ("The effect of plaintiffs' failure to respond timely to the requests for admission entitles Wake County to summary judgment on count one.").

Summary judgment against Custodio based on Rule 36(b) is exactly what the Federal Rules and the Fourth Circuit require, and it is precedented in this district. It is also fair in the context of this litigation. Custodio made no effort to develop a defense: he did not answer the complaint, serve discovery, take any depositions, or disclose any experts. His testimony also aligns with the admissions, so adhering to Rule 36(b) and holding Custodio to his admissions does not deprive him of factual disputes he may otherwise have had.

### III. The Court Should Set a Trial on Damages

This motion seeks only summary judgment on liability against Custodio on Count III of the Amended Complaint. A jury must still decide what damages Custodio's misconduct caused. And a jury must also decide liability and damages as to the other two counts of the Amended Complaint.

### CONCLUSION

There is no need for a trial on Custodio's liability. The Court should therefore grant Plaintiff summary judgment against Custodio and schedule a trial only on damages against Custodio and Plaintiff's claims against Defendants Beasley and Urieta.

12

Case 5:21-ct-03157-D    Document 50    Filed 08/14/23    Page 12 of 13

Dated: August 14, 2023  Respectfully submitted,

/s/ Alison R. Leff

Alison R. Leff
The Civil Rights Group, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
(708) 722-2241 (phone)
alison@civilrightsgroup.com
Ill. Bar No. 6296422
Attorney for Plaintiff

G. Christopher Olson
Olson Law, PLLC
514 Daniels St., #136
Raleigh, NC 27605
(919) 624-3718
chris@olsonlaw-pllc.com
Fax: (919) 834-1071
N.C. State Bar No. 21223
Local Civil Rule 83.1(d) Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I caused a copy of this document to be served on counsel of record for all parties by filing it via CM/ECF.

Dated: August 14, 2023  /s/ Alison R. Leff
One of Plaintiff's Attorneys