BRANDON CASE,                )
                             )
            Plaintiff,       )
                             )
    v.                       )        **ORDER**
                             )
OFFICER BEASLEY, et al.,     )
                             )
            Defendants.      )

On January 21, 2020, a "safekeeper" inmate named Kenneth Kennion ("Kennion")[1] assaulted Brandon Case ("Case" or "plaintiff") at Central Prison "without provocation," leaving Case permanently disfigured and "in constant pain since the attack." Am. Compl. [D.E. 31] ¶¶ 24, 30, 33, 41. Case sues three correctional officers (Custodio, Beasley, and Urieta) under 42 U.S.C. § 1983 and alleges that they failed to protect him from Kennion's assault and thereby violated the Eighth Amendment. See id. ¶¶ 9–11, 49–69.[2] Case seeks summary judgment on count three of the amended complaint against Custodio. See [D.E. 78]. Defendants seek summary judgment and argue that even viewing the evidence in the light most favorable to Case, defendants were, at most, negligent and therefore did not violate Case's constitutional rights. [D.E. 82] 2. Alternatively,

---

[1] The parties occasionally spell the name of Case's assailant as Kenyon. See, e.g., Def.'s Statement of Material Facts ("DSMF") [D.E. 83] 5; [D.E. 96] ¶ 18.

[2] Case also names as defendants "Unknown Employees of the State of North Carolina . . . whose misconduct resulted in Case's injuries but whose names Case does not yet know." Am. Compl. ¶ 12. Case has not moved to amend his complaint to name any additional defendants. Accordingly, the court dismisses these defendants. Cf. Haba v. Arthur, 851 F. App'x 405, 406 (4th Cir. 2021) (per curiam); Chidi Njoku v. Unknown Special Unit Staff, 217 F.3d 840, at *1 (4th Cir. 2000) (per curiam) (unpublished); Schiff v. Kennedy, 691 F.2d 196, 197–98 (4th Cir. 1982).

defendants assert qualified immunity. See id. at 27–32. As explained below, the court agrees with the defendants, grants defendants' motion for summary judgment, and denies plaintiff's motion for summary judgment.

I.

Case alleges that "while he was a prisoner of North Carolina living at Central Prison, Defendants... failed to protect him from being attacked by Kennion." Pl.'s Statement of Material Facts ("PSMF") [D.E. 80] ¶ 80; see [D.E. 102] ¶ 80.[3] Safekeepers are pretrial detainees who county jails send to be housed at Central Prison. "One of the reasons a county jail may send a safekeeper to Central Prison is that the prisoner is so violent and aggressive the jail [cannot] safely house him." PSMF ¶¶ 5–6; see [D.E. 102] ¶¶ 5–6. The parties have presented no evidence, however, that Kennion had a history of assaulting other inmates. Moreover, there are other reasons a county jail can send a pretrial detainee to Central Prison for safekeeper status. See DSMF 3 (listing other reasons a county jail can transfer a pretrial detainee to safekeeper status); [D.E. 96] ¶ 8.[4] Furthermore, safekeepers wear specific uniforms at Central Prison to visually distinguish them from general population inmates. PSMF ¶¶ 8–9; see [D.E. 102] ¶¶ 8–9.

"Unit 2 of Central Prison houses Safekeepers on the second floor and General Population Inmates on the ground floor." DSMF 3; see [D.E. 96] ¶ 10; PSMF ¶¶ 3, 10; [D.E. 102] ¶¶ 3, 10. Safekeepers and general population inmates "are never supposed to be in the same hallway at the

---

[3] Because defendants failed to number the paragraphs in their statement of material facts as required by Local Civil Rule 56.1(a)(1), see [D.E. 83], the court uses the paragraph numbers that Case used in his opposing statement of material facts.

[4] Case objects to defendants' citation to public records which they did not disclose in discovery. See [D.E. 96] ¶¶ 6, 8–9, 11. "However, courts do not typically order discovery of public records which are equally accessible to all parties." Eshelman v. Puma Biotechnology, Inc., No. 7:16-CV-18, 2018 WL 1702773, at *6 (E.D.N.C. Apr. 6, 2018) (unpublished) (collecting cases).

2

same time." PSMF ¶ 12; see [D.E. 102] ¶ 12. Correctional officers occupy control booths on each floor and employ locking sallyport doors and visual confirmation to control access to the stairwells and hallways. See PSMF ¶¶ 17–20, 22–25, 30; [D.E. 102] ¶¶ 17–20, 22–25, 30. "Another way a control booth officer can make sure the hallway is clear is to use a radio to communicate with officers in other parts of Unit 2. A control booth officer should not unlock the door to a secure hallway without conducting those safety checks." PSMF ¶¶ 27–28; see [D.E. 102] ¶¶ 27–28.

On the day Kennion attacked Case, general population inmates, including Case, "were getting haircuts in the hallway near the second-floor control booth on D block of Unit 2[]" while safekeeper inmates were at recreation. PSMF ¶¶ 43, 46–47; see [D.E. 102] ¶¶ 43, 46–47; DSMF 7; [D.E. 96] ¶ 15. Custodio was assigned to the upstairs control booth while Urieta and Beasley were assigned to the downstairs control booth.[5] See PSMF ¶ 41; [D.E. 102] ¶ 41; DSMF 5–6; [D.E. 96] ¶ 20, 23, 31–32. "Because of the number of inmates going up and down the stairwell to get haircuts and return to their cells in a short period of time, the correctional officers in the upstairs and downstairs control booths had left the doors open at the top and bottom of the stairwell." DSMF 5; [D.E. 96] ¶ 14; see also PSMF ¶ 49 (Custodio "decided to leave the stairwell door open because it was easier to do so than to open and close the door for each prisoner who came and went for a haircut"); [D.E. 102] ¶ 49; [D.E. 96] ¶ 23.

An unidentified officer may have placed a radio call announcing the safekeepers' return from recreation. Defendants deny hearing any such radio call. Compare DSMF 6, 8, 11 with [D.E.

---

[5] Urieta was in the restroom when Kennion attacked Case. See DSMF 6; [D.E. 96] ¶ 32. "On that day, prior to the incident Beasley had been stationed on downstairs patrol[,]" but was working the downstairs control booth when Kennion attacked Case. DSMF 11; see [D.E. 96] ¶ 36.

3

96] ¶¶ 4, 19, 26, 30. Regardless, the answer to this disputed issue is not material in this case under the Eighth Amendment.

"After getting his haircut [Case] began to walk down the stairwell to the ground floor. At the exact same time Case was walking down the stairs, a group of safekeeper inmates were returning from their recreation time and were walking down the first-floor hallway to go up the stairwell and return to their second floor cells." DSMF 5; see [D.E. 96] ¶¶ 15–17. "When Plaintiff Case entered the hallway, Kennion attacked Case allegedly without provocation. Kennion struck Case in the face repeatedly before a correctional officer intervened." DSMF 2; see [D.E. 96] ¶ 5; cf. PSMF ¶ 63; [D.E. 102] ¶ 63. Defendant "Beasley yelled that Case and Kennion were fighting." DSMF 7; see [D.E. 96] ¶ 24. Beasley also "called an alarm over the radio and several staff members rushed to the area and immediately took charge of the situation." DSMF 12; see [D.E. 96] ¶ 41. Before the attack, defendants were "not aware that Kenneth Kennion or Brandon Case had any animosity towards one another or were somehow at odds with each other before Kennion punched Case." DSMF 8, 10, 12; see [D.E. 96] ¶¶ 27, 34, 41.

II.

A.

A court may grant summary judgment when, after reviewing the record as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleadings, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In doing so, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011).

Here, the parties have submitted video recordings capturing Kennion's attack on Case. See [D.E. 52-11, 52-12, 68-3, 84-7, 84-8, 92]. Video evidence can affect the summary judgment standard. See Scott, 550 U.S. at 378; Alexander v. Connor, 105 F.4th 174, 179 (4th Cir. 2024); Jones v. Solomon, 90 F.4th 198, 204 (4th Cir. 2024); Brooks v. Johnson, 924 F.3d 104, 111–12, 115 (4th Cir. 2019). Where the video contradicts the nonmoving party's version of the facts such that no reasonable jury could believe the nonmoving party, the court must view the facts in the light depicted by the video. See Scott, 550 U.S. at 379–81; see, e.g., Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009). But this exception is a "narrow" one. Lewis v. Caraballo, 98 F.4th 521, 529 (4th Cir. 2024). In this case, the video recordings have no sound. Furthermore, while the video recordings show Kennion attacking Case, the videos fail to adequately capture defendants' conduct. Thus, the court does not rely on the video recordings in resolving the motions.

B.

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (cleaned up); see Hudson v. Palmer, 468

5

U.S. 517, 526–27 (1984); Ford v. Hooks, 108 F.4th 224, 229 (4th Cir. 2024); King v. Riley, 76 F.4th 259, 264 (4th Cir. 2023); Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722–23 (4th Cir. 2010); Price v. Sasser, 65 F.3d 342, 345 (4th Cir. 1995); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). However, "[n]ot every injury suffered by a prisoner at the hands of another establishes liability against a prison official." Brown, 612 F.3d at 723; see Farmer, 511 U.S. at 834; Ford, 108 F.4th at 230. "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (quotation omitted); see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

The subjective prong requires the prisoner to show that the prison official acted with deliberate indifference to the inmate's health or safety. See, e.g., Farmer, 511 U.S. at 834–40; Ford, 108 F.4th at 230; De'lonta, 708 F.3d at 525; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Although "deliberate indifference entails something more than mere negligence, . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Deliberate indifference requires that "a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta, 708 F.3d at 525 (quotation omitted); see Farmer, 511 U.S. at 837; Johnson, 145 F.3d at 167. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Makdessi v. Fields, 789 F.3d 126, 133–34 (4th Cir. 2015). "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. Parrish ex rel.

Case 5:21-ct-03157-D    Document 106    Filed 08/30/24    Page 6 of 10

Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis omitted). Rather, a plaintiff must prove "actual knowledge of the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted). A prisoner's failure to give warning of, or protest exposure to, the objectively serious risk does not conclusively show that a prison official lacked actual knowledge. See Makdessi, 789 F.3d at 134. Moreover, a prisoner can prove "[a] prison official's subjective actual knowledge . . . through circumstantial evidence." Id. at 133. Furthermore, a risk "of harm might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it." Id.

Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate" the objectively serious risk of harm. Iko, 535 F.3d at 241 (quotation and emphasis omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); see Wilson v. Seiter, 501 U.S. 294, 298–99 (1991); Alexander, 105 F.4th at 182; Ford, 108 F.4th at 230. Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "Liability under § 1983 must be analyzed individually for each defendant." Jones, 90 F.4th at 207; see King, 76 F.4th at 269.

The parties focus on whether defendants acted with deliberate indifference to Case's safety by leaving the stairwell doors unlocked. See [D.E. 79] 7–11; [D.E. 82] 21–27. The record lacks any direct evidence that defendants knew that "the risk to which [Case] was exposed in the [stairwell] was any different from, or greater than, the risk of violence that exists generally in the prison environment." Jordan v. Maryland, No. CV 22-1541, 2024 WL 3597203, at *12 (D. Md. July 31, 2024) (unpublished); see, e.g., Farmer, 511 U.S. at 842; King, 76 F.4th at 266 n.7; Danser

7

v. Stansberry, 772 F.3d 340, 348–49 (4th Cir. 2014); Rich v. Bruce, 129 F.3d 336, 338–40 (4th Cir. 1997); cf. Koon v. North Carolina, 50 F.4th 398, 407–10 (4th Cir. 2022). The record lacks any circumstantial evidence demonstrating a "truly obvious" risk to Case due to defendants' failure to keep the stairwell doors locked.[6] Koon, 50 F.4th at 407; see Farmer, 511 U.S. at 842; Makdessi, 789 F.3d at 133; Danser, 772 F.3d at 348–49; Rich, 129 F.3d at 338–40; cf. King, 76 F.4th at 265. Although the defendants may have permitted the safekeepers to pass through the hallway with general population inmates, not all safekeepers received their designation as a result of being violent and aggressive. See Chapter C, § .1601(b)(1), "Safekeepers," State of North Carolina Department of Public Safety Prisons, Policy & Procedures (listing other reasons for safekeeper designation). Moreover, neither party presents evidence to suggest that Kennion had ever before attacked another inmate. To the extent Case relies on defendants' alleged failure to follow policies or training, Case has not demonstrated that defendants violated the Constitution. See, e.g., King, 76 F.4th at 267; Danser, 772 F.3d at 348–49; Rich, 129 F.3d at 338–40; Jordan, 2024 WL 3597203, at *13. Accordingly, the court grants defendants' motion for summary judgment and denies plaintiff's motion for partial summary judgment.

C.

Defendants also argue that they are entitled to qualified immunity. See [D.E. 82] 27–32. Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

---

[6] In his complaint, Case alleged that his "attack . . . was at least the third time in recent months that a safekeeper attacked a general population inmate because of staff's failure to follow protocols to keep general population inmates separated from safekeepers[,]" including an assault "in the same spot where Case was attacked[.]" Am Compl. ¶¶ 46–47. Case, however, did not verify his complaint and did not produce evidence in the record to support this allegation. Cf. Jones, 90 F.4th at 206 & n.7; Raynor v. Pugh, 817 F.3d 123, 129 (4th Cir. 2016).

8

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–8 (2021) (per curiam); City of Tahlequah v. Bond, 595 U.S. 9, 12–14 (2021) (per curiam); City of Escondido v. Emmons, 586 U.S. 38, 42–44 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 103–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–68 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017) (per curiam); Ziglar v. Abbasi, 582 U.S. 120, 150–52 (2017); White v. Pauly, 580 U.S. 73, 78–80 (2017) (per curiam); Mullenix v. Luna, 577 U.S. 7, 11–13 (2015) (per curiam); Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 611 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 104; Wesby, 583 U.S. at 63; Ziglar, 582 U.S. at 151–52; White, 580 U.S. at 79–80; Mullenix, 577 U.S. at 12; Taylor, 575 U.S. at 825; Sheehan, 575 U.S. at 611; Carroll, 574 U.S. at 17.

In analyzing qualified immunity, the court asks, "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (cleaned up); see Reichle, 566 U.S. at 664; Lewis, 98 F.4th at 530; King, 76 F.4th at 264–65; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). Courts may decide which question to address first. See Pearson, 555 U.S. at 242; Lewis, 98 F.4th at 530. Qualified immunity shields a defendant if the answer to either question is "no." See Reichle, 566 U.S. at 664; Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011); Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir.

9

2007); Bostic, 667 F. Supp. 2d at 605–06. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 563 U.S. at 741 (cleaned up). Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see Reichle, 566 U.S. at 664.

Case has not shown that the defendants violated the Constitution or that the alleged right was clearly established. At most, defendants were negligent. See, e.g., King, 76 F.4th at 266–68; Danser, 772 F.3d at 348–49; Rich, 129 F.3d at 338–40. Accordingly, defendants are entitled to qualified immunity.

## III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 81] and DENIES plaintiff's second motion for partial summary judgment [D.E. 78]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and his court's local rules. The clerk shall close the case.

SO ORDERED. This 30 day of August, 2024.

                                                        JAMES C. DEVER III
                                                        United States District Judge

10

Case 5:21-ct-03157-D    Document 106    Filed 08/30/24    Page 10 of 10